[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION FOR ORDER OF TEMPORARY CUSTODY
Precious G-B, a girl, was born on November 12, 1990 at the hospital of St. Raphael in New Haven. Her mother is Nancy G. and her father is Robert B.
On November 20, 1990 the Commissioner of the Department of Children and Youth Services ("DCYS") filed a petition alleging neglect and an application for an order of temporary custody ("OTC"). An OTC was issued ex parte on November 20th, the court finding that the child was "in immediate physical danger from CT Page 3733 surroundings and that immediate removal from such surroundings is necessary to insure the safety of said child and further that the conditions or the circumstances surrounding the case of said child require that custody be immediately assumed to safeguard the- welfare of said child." The child was placed in foster care on discharge from the hospital and has never been in the sole care and custody of her parents.
A hearing on the OTC opened on December 7, 1990 and continued on December 18, when all parties rested. Briefs were scheduled and were filed by the parties on or about January 15, 1991. During the course of the OTC hearing the court, over objection, took judicial notice of all court files pertaining to other children of either Nancy G. or Robert B.
 II
Based on the evidence presented, the court finds, by a fair preponderance of the evidence:
1. Precious G-B was diagnosed shortly after birth as having a "hyperflexed" left thumb, with limited range of motion. (Testimony of Jennifer L. R. Mayer, M.D.) Such a condition will require follow-up consultations with orthopedic and plastic surgeons. If the said condition is not treated appropriately the child can lose the use of her thumb.
Further, Precious was diagnosed as having probable neurological problems. She was an irritable, colickly newborn with increased motor tone in her extremities and frequent back arching. (Affidavit of Jennifer L. R. Mayer, M.D., dated November 16, 1990.) This condition requires monitoring by the child's caretaker and consultation with neurology specialists. Mother does not seem to understand the medical and social implications of the child's possible physical problems.
2. Precious' mother, Nancy G., is limited intellectually, mildly retarded. Following Precious' birth, mother evidenced no understanding of basic child care needs. (Affidavit and Testimony of Sue P. Smith.)
3. Prior to Precious' birth, Nancy G. did not respond to letters from Gillian Vasquez, DCYS, offering services to her as an expectant mother. (Testimony of Gillian Vasquez.) Following Precious' birth, both parents indicated to hospital staff they did not need help in parenting Precious. (Testimony of Sue Smith.) (The court notes that in her Brief, mother through counsel, states she "will abide by any conditions set by the Court.")
4. During the first 8 days of Precious' life, the father, CT Page 3734 Robert B., in discussing Precious' behavior, stated to hospital staff his belief that the infant was "playing possum," "trying to manipulate adults and that he was not going to spoil" the child. (Testimony of Sue Smith.)
5. Robert B. was charged and convicted in 1983 of two counts of risk of injury to a minor, having been accused of physical abuse of two of his children, Joseph and Lakeisha. (Testimony of Sally Fleming; of Sue Smith of Eloise Bette Reed; Petitioner's Exhibit A.) Robert B.'s parental rights in and to these children were later terminated.
6. Nancy G. date of birth is June 3, 1969. Precious is Nancy's fifth child. Nancy's parental rights in and to Nancy, Jr., her first child, were terminated in May, 1985. The other three children are placed with paternal relatives.
7. Apart from his acts leading to his risk of injury convictions, Robert B. uttered a threat of violence in November, 1990 to St. Raphael Hospital staff. (Testimony of Sue Smith.) Robert B. was involved in an altercation outside this courthouse in March 1990, in which he used physical force on Nancy G. (Testimony of Gillian Vasquez); on or about March 1990 Nancy displayed a bruise and stated her fear of Robert B. (Testimony of Gillian Vasquez; Testimony of Sally Fleming.) On or about March 19, 1990 Nancy asked Ms. Vasquez to retrieve her wallet from Mrs. Reed's residence, and stated her fears of Robert B.
 IV
The court has before it a passive intellectually limited mother; a volatile violence-prone father; both parents manifestly equipped to care for an infant; both parents seeing no need for assistance in acquiring parental skills a child with special needs who requires special understanding and patience from his caretakers; both parents, each with a woeful history of parental failures.
Are the parents' histories relevant and probative in determining whether the child would be in immediate physical danger if returned to their care? The court answers in the affirmative. The court is not here to affix blame on the parents but to determine what is in the best interests of the child. The court would be remiss if it ignored the parents' histories in making this determination.
Based on the facts found, the court concludes that the state has met its burden to prove by a fair preponderance of the evidence that the child would be in immediate physical danger if returned to her parents. CT Page 3735
The order of temporary custody is confirmed.
JOHN T. DOWNEY, J.